### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| S.S. AND M.S., individually and on behalf of H.S., and H.S., | No. 1:20-cv-13077-NLH-MJS |
| Plaintiffs, | **OPINION** |
| v. | |
| HILLSBOROUGH TOWNSHIP BOARD OF EDUCATION and NEW JERSEY DEPARTMENT OF EDUCATION, | |
| Defendants. | |

ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
100 SPRINGDALE ROAD A3
PMB 287
CHERRY HILL, NJ 08003

DONALD A. SOUTAR
COYLE LAW GROUP, LLP
55 MADISON AVENUE - SUITE 400
MORRISTOWN, NJ 07960

KRISTA LYNN HALEY
JOHN RUE & ASSOCIATES
37 MAIN ST.
SPARTA, NJ 07871

JOHN DOUGLAS RUE
JOHN RUE & ASSOCIATES
694 ROUTE 15 SOUTH - SUITE 206
LAKE HOPATCONG, NJ 07849

LISA MARIE QUARTAROLO
JOHN RUE & ASSOCIATES, LLC
694 ROUTE 15 SOUTH
LAKE HOPATCONG, NJ 07849

   *Counsel for Plaintiffs.*

JACLYN MICHELLE FREY
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET - P.O. BOX 112
TRENTON, NJ 08625

    *Counsel for NJDOE.*

VITTORIO S. LAPIRA
FOGARTY & HARA, ESQS.
21-00 ROUTE 208 SOUTH
FAIR LAWN, NJ 07410

    *Counsel for Hillsborough Township Board of Education.*

**<u>HILLMAN</u>, District Judge**

Currently before the Court is the New Jersey Department of Education's (the "NJDOE") Motion to Dismiss Plaintiffs'[1] Complaint (ECF 32).  For the reasons that follow, the NJDOE's motion will be granted in part and denied in part.

<u>RELEVANT FACTUAL AND PROCEDURAL HISTORY</u>

For purposes of this motion to dismiss, the Court takes the facts alleged in the complaint as true and will only recount those salient to the instant motion.  H.S. is a disabled child born in 2001 who was receiving special education services from the Hillsborough Township Public Schools District ("HTPSD"). (ECF 9 at 9).  The complaint alleges that H.S. has been diagnosed with autism, Attention Deficit Disorder ("ADD"); Generalized Anxiety Disorder; Major Depressive Disorder and

---

[1] Plaintiffs are S.S. and M.S., individually and on behalf of H.S. and H.S. individually.  S.S. and M.S. are H.S.'s parents. (<u>See generally</u> ECF 9).

Social Anxiety Disorder.  (Id.)  Plaintiffs claim that HTPSD knew about H.S.'s autism diagnosis at all relevant times and knew about H.S.'s ADD and anxiety since at least December 2011. (Id.)  Despite HTPSD's knowledge of the diagnoses, Plaintiffs contend that H.S. did not receive the proper education placement, in part because HTPSD failed to conduct learning assessments when it was obligated to do so.  (Id.)  Among other failures, Plaintiffs contend that HTPSD was obligated to conduct learning assessments of H.S. in 2014 and that they never conducted such an assessment.  (Id. at 10).  Because of this, H.S. was not placed in an appropriate educational program.  (Id. at 11).

Plaintiffs further allege that H.S. was subjected to severe bullying by teachers at Hillsborough High School, particularly the Director of Bands.  (Id. at 12).  The complaint details verbal abuse by the Director and emulation of that abuse by H.S.'s classmates.  (Id. at 12-13).  Ultimately, because of this bullying and the fact that HTPSD failed to provide H.S. with an appropriate educational program, Plaintiffs decided to withdraw H.S. from Hillsborough High School and enroll him at Fusion Academy.  (Id. at 21).  Before doing so, in August 2017, Plaintiffs filed two "ten-day notices" with HTPSD to give HTPSD an opportunity to try to remedy the issue.  (Id.)  HTPSD never proposed a remedy during those ten-day periods and H.S. started

3

schooling at Fusion Academy in October 2017.  (Id. at 21-22).

The complaint states that Plaintiffs ultimately filed a due process petition with the NJDOE to resolve their grievances. (Id. at 4).  The NJDOE eventually transferred the matter to the New Jersey Office of Administrative Law (the "OAL") for a hearing.  (Id.)  According to the complaint, the Administrative Law Judge (the "ALJ") who handled the hearing took over a year to issue an opinion and when she finally did, it was so rife with factual errors and failures to address the facts that it shows a complete breakdown of the hearing process which the NJDOE was responsible for maintaining.  (See id. at 26, 46). Specifically, Plaintiffs allege that the ALJ completely ignored the testimony of certain witnesses at the hearing, improperly shifted the burden of proof and persuasion onto Plaintiffs, and ignored the fact that Plaintiffs gave notice of their concerns regarding H.S.'s educational placement prior to enrolling him at Fusion Academy.  (Id. at 26-27).

Plaintiffs originally filed this matter on September 23, 2020, naming the Hillsborough Township Board of Education as the sole defendant.  (ECF 1).  On February 10, 2021, Plaintiffs filed an amended complaint, naming the NJDOE[2] as a defendant. (ECF 9).  The amended complaint contains five counts against the

---

[2] The complaint also adds the Commissioner of Education in her official capacity to the caption but none of the counts in the complaint implicate the Commissioner directly.

NJDOE.  Count VI alleges that the State Defendants violated Plaintiffs' right to an impartial due process hearing under the Individuals with Disabilities Education Act 20 U.S.C. § 1400, et seq. (the "IDEA") and corresponding New Jersey law, N.J.A.C. 6A:14-1, et seq.  (ECF 9 at 44).  Count VII alleges that the State Defendants violated Plaintiffs' right to a timely final decision by the ALJ under the IDEA and attendant New Jersey law. (Id. at 46).  Count VIII alleges violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (ECF 9 at 47).  Count IX alleges violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA").  (ECF 9 at 48).  Finally Count X alleges a violation of the New Jersey State Constitution via the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (the "NJCRA").  The NJDOE moves to dismiss the counts against it under Rule 12(b)(1) and Rule 12(b)(6).

## **BACKGROUND**

### I.   The IDEA

Though Plaintiffs state claims under laws other than the IDEA, the thrust of their complaint revolves around the defendant's failure to honor their responsibilities under the IDEA.  Therefore, the Court will provide some color on the IDEA as a statutory and regulatory scheme.  Congress enacted the IDEA to, among other things, ensure "the rights of children with

disabilities and parents of such children are protected[.]"  20
U.S.C. § 1400(d)(1)(A)-(B).  The IDEA requires that every child
with a disability receive a free appropriate public education (a
"FAPE") from their public school if that school receives federal
funding under the IDEA.  Id. at § 1412(a)(1)(A); 34 C.F.R. §
300.101(a).  The term "free appropriate public education" means
the provision of "special education and related services" that
meet certain criteria.  20 U.S.C. § 1401(9).  The IDEA also
guarantees parents of disabled children a right to participate
in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and
that the rights of disabled students and their parents are not
infringed, Congress enacted various "procedural safeguards" that
participating public schools must comply with.  Id. at §
1412(6)(A); id. at § 1415(a).  One such procedural safeguard
provides standards for adjudicating disputes about whether a
school has adequately provided a FAPE.  Per Congress'
requirements, these disputes begin with the filing of a "due
process petition" or "due process complaint."  Either the public
school or the child may file a due process complaint, and that
complaint may seek relief with respect to "any matter relating
to the identification, evaluation, or educational placement of
the child, or the provision of a free appropriate public
education to such child."  Id. at § 1415(b)(6).  The IDEA

contemplates that it is the State Educational Agency that is
responsible for making sure that there are fair and impartial
procedures in place to handle any due process petition.  Id. at
§1415 (f)(1)(A) ("Whenever a complaint has been received under
subsection (b)(6) or (k), the parents or the local educational
agency involved in such complaint shall have an opportunity for
an impartial due process hearing, which shall be conducted by
the State educational agency or by the local educational agency,
as determined by State law or by the State educational
agency."); id. at §1415(e)(1) ("Any State educational agency or
local educational agency that receives assistance under this
subchapter shall ensure that procedures are established and
implemented to allow parties to disputes involving any matter.")
Once a due process complaint has been filed, Congress has set
strict deadlines by which certain events must occur.  See Id. at
§ 1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a
due process hearing"); 34 C.F.R. § 300.515(a) (setting forth a
strict timeframe for due process petition resolution); N.J.A.C.
6A:14-2.7(j) (same).  These procedures are central to the
instant matter.

Beginning with the date the due process complaint is filed,
the parties have thirty days within which to settle or otherwise
resolve the dispute to the satisfaction of the parent and child.
See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b).  This

7

period is referred to as the "resolution period."  If the case
is not resolved during the resolution period, it may proceed to
a hearing.  Congress has called these "due process hearings."
In New Jersey, "[a] due process hearing is an administrative
hearing conducted by an administrative law judge" in the OAL.
N.J.A.C. 6A:14-2.7(a).  "If the local educational agency has not
resolved the complaint to the satisfaction of the parents within
30 days of the receipt of the complaint, the due process hearing
may occur, and all of the applicable timelines for a due process
hearing under this subchapter shall commence"  20 U.S.C. §
1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); see N.J.A.C. 6A:14-
2.7(j) ("A final decision shall be rendered by the
administrative law judge . . . after the conclusion of the
resolution period").  Once the 30-day resolution period ends,
federal regulations require that due process petitions be
decided by hearing officers within 45 days, unless either party
requests specific adjournments.  34 C.F.R. § 300.515(a) (states
receiving federal funding "must ensure that not later than 45
days after the expiration of the 30 day period under §
300.510(b) . . . (1) A final decision is reached in the hearing;
and (2) A copy of the decision is mailed to each of the
parties.").  New Jersey's Administrative Code contains a similar
requirement.  N.J.A.C. 6A:14-2.7(j) ("[a] final decision shall

be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period[.]")

Both federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party" which will effectively toll the 45-day period within which a decision must be entered.  See N.J.A.C. 6A:14-2.7(j) (45-day period may only be extended if "specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a] hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.").  No other delays are contemplated.  Therefore, if no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period. 34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j).  The Court refers to this requirement as the "45 Day Rule."  With that overview, the Court turns to Plaintiffs' allegations.

**DISCUSSION**

I.  <u>Subject Matter Jurisdiction</u>

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

II.  <u>Standard of Review</u>

When considering a motion to dismiss a complaint for

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and

(3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,

181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

Rule 12(b)(1) governs the NJDOE's motion to the extent it challenges Plaintiffs' action on standing and immunity grounds. "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'"  Id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that

12

motions to dismiss for lack of standing are best understood as
facial attacks.  In re Schering Plough Corp. Intron/Temodar
Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)
("Defendants' Rule 12(b)(1) motions are properly understood as
facial attacks because they contend that the [a]mended
[c]omplaints lack sufficient factual allegations to establish
standing.").  In assessing a facial attack on subject matter
jurisdiction under Rule 12(b)(1), courts must apply the familiar
12(b)(6) standard.  Id. ("In evaluating whether a complaint
adequately pleads the elements of standing, courts apply the
standard of reviewing a complaint pursuant to a Rule 12(b)(6)
motion to dismiss for failure to state a claim"); see also
Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d
Cir. 2011) ("A dismissal for lack of statutory standing is
effectively the same as a dismissal for failure to state a
claim.").  Guided by In re Schering Plough and Baldwin, the
Court finds it must apply the 12(b)(6) standard to Defendants'
jurisdictional arguments.

   III.  Analysis

      a. Counts VI and VII: Violation of the
         IDEA and New Jersey Law

   The NJDOE moves to dismiss Counts VI and VII on the grounds
that Plaintiff has not plausibly pled that they did not receive
an impartial due process hearing and that the NJDOE violated the

45 Day Rule.  The NJDOE argues that Plaintiffs have not
plausibly pled that they did not receive an impartial due
process hearing because the NJDOE does have a dispute resolution
system in place pursuant to the IDEA.  (ECF 32 at 7).  They
further argue that the statutory framework and its attendant
regulations, specifically citing to 20 U.S.C. §1415(f)(3) 34
C.F.R. § 300.511, and N.J.A.C. § 6A:14-2.7(k), requires that due
process hearings be conducted by an impartial hearing officer
and that the NJDOE may not review those decision.  (ECF 32 at 9-
10).  With respect to Count VII, the NJDOE argues that a
violation of the 45 Day Rule is a procedural violation, not a
substantive violation under the IDEA, and therefore, Plaintiffs
have not pleaded a denial of FAPE.  (Id. at 17-19).  They also
argue that Count VII is precluded by the entire controversy
doctrine. (Id. at 12-17).

     With respect to whether Plaintiffs have plausibly pled
enough facts to suggest that they did not receive an impartial
due process hearing and the 45 Day Rule was violated such that
there was a substantive violation of the IDEA, the Court holds
that those claims have been adequately pled.  First, Plaintiffs
are correct that the IDEA is organized such that the ALJs who
conduct the due process hearings may not be employees of the
NJDOE.  20 U.S.C. §1415 (f)(3)(A)(i).  But that very same
statute makes clear that it is the NJDOE who is responsible for

the infrastructure that creates such impartial due process hearings.  Id. at §1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.")

Further, the tone of § 1415 makes clear that it is the State Educational Agency, in this case, the NJDOE, that is responsible for the "procedures" underlying dispute resolution. Id. at §1415(e)(1) (stating in the context of mediation that "[a]ny State educational agency or local educational agency that receives assistance under this subchapter shall ensure that procedures are established and implemented to allow parties to disputes involving any matter").  The state regulations echo this requirement.  See N.J.A.C. § 6A:14-2.7(g) ("When the Office receives a request for a due process hearing, the matter shall be processed and, as appropriate, mediation and a due process hearing in accordance with this chapter will be made available to the parties.").  Courts have made clear that it is ultimately the state who is responsible for making sure that the due process hearings are fair.  Garden Acad. v. E.M. On Behalf of B.M., 2021 WL 308108, at *2 (D.N.J. Jan. 29, 2021) ("Congress

gave state authorities the 'responsibility generally for establishing fair hearing procedures.'") (quoting Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 54 (2005)).  Thus, the NJDOE's hand waiving that due process hearings must be conducted by an impartial ALJ misses that point.  Indeed, such hearings must be conducted by an impartial ALJ, but the NJDOE has the responsibility to make sure that the overall procedure for such hearings are set up in a fair and impartial manner.  The NJDOE may not outsource its statutory obligations under federal law.

Plaintiffs do not spell out exactly how the NJDOE fell short of this responsibility in a concise allegation, which, to be sure, would have been helpful.  However, the standard under Rule 12(b)(6) is whether the allegations in the complaint as a whole state a plausible claim.  See Kedra v. Schroeter, 876 F.3d 424, 441 (3d Cir. 2017) ("To make this assessment on a Rule 12(b)(6) motion, "courts must consider the complaint in its entirety. . . The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of [a claim], not whether any individual allegation, scrutinized in isolation, meets that standard.") (internal citations and quotation marks omitted) (emphasis in original); see also Destro v. Hackensack Water Co., 2009 WL 3681903, at *2 (D.N.J. Nov. 2, 2009) ("The Court must consider the Complaint in its entirety and review the

allegations as a whole and in context.")

Here, Plaintiffs specifically alleged that "The ALJ's (as an agent of defendant NJDOE) complete failure to address the substance of the Parent's complaint comprised a failure of NJDOE to provide the Parents with an impartial due process hearing, as required by the IDEA." (ECF 9 at 6). The rest of the complaint repeatedly outlines the NJDOE's responsibility to maintain appropriate due process hearing procedures and alleges that the ALJ's mistakes were so egregious that they amounted to a breach of the NJDOE's responsibility to provide adequate procedures. (Id. at 18) ("The ALJ's gross misstatement of facts on the record goes beyond a mere error of fact or law. It is an abject failure by the agent of NJDOE to conduct an adequate "due process hearing.") At this point the Court need not decide the veracity of this allegation, but merely satisfy itself that Plaintiffs have stated claims such that discovery might bear out their allegations. Frazier v. Morristown Mem'l Hosp., 767 F. App'x 371, 375 (3d Cir. 2019) ("In reviewing a District Court's decision to grant a Rule 12(b)(6) dismissal, we look for 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of' a claim for relief.") (internal quotation marks omitted). The Court is satisfied that Plaintiffs have pleaded Count VI sufficiently such that it will deny the NJDOE's motion to dismiss on this

count.

The Court will also deny the NJDOE's motion to dismiss Count VII alleging a violation of the 45 Day Rule. Like the responsibility to create procedures for an impartial due process hearing, the IDEA makes the NJDOE responsible for timely resolution of due process hearings. 34 C.F.R. § 300.515(a) (states receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties."); see also N.J.A.C. § 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period[.]")

Plaintiffs have plausibly stated a claim that the NJDOE violated the 45 Day Rule. The complaint specifically states that the NJDOE "has failed, and continues to fail to ensure, the timely resolution of special education disputes, as required by federal and state law." (ECF 9 at 46). It then goes on to state that 505 days went by between the filing of the due process petition and the final resolution of Plaintiffs' claims. (Id.) The NJDOE contends that these allegations amount at most to a procedural violation of the IDEA for which there is no remedy. (ECF 32 at 18). This Court has already made abundantly clear

that violations of the 45 Day Rule can be so egregious that they cross the line from procedure into substance and become actionable. <u>C.P. v. New Jersey Dep't of Educ.</u>, 2020 WL 2611572, at *8 (D.N.J. May 22, 2020) ("In this case, the Court finds that Plaintiffs have asserted a plausible claim that the delays experienced by the Former NJOAL Plaintiffs and the Doe Family crossed the line from minor, non-actionable delays to delays so significant that they deprived disabled students and their parents of the substantive rights guaranteed to them by the IDEA.")  Plaintiffs' allegation that it took 505 days to resolve their due process complaint, (ECF 9 at 46), clearly crosses the line from procedural to substantive.[3]

Defendants' final argument with respect to Count VII is that it is barred by the entire controversy doctrine because of the pendency of <u>C.P. v. New Jersey Dep't of Educ.</u>, No. 19-cv-12807, (D.N.J. 2019) (the "<u>C.P.</u> Docket").  The Court disagrees. As a threshold matter, the fact that Plaintiffs already have

---

[3] The NJDOE argues that Plaintiffs are not entitled to compensatory damages because they are not available for procedural violations of the IDEA.  However, where the procedural violations alleged are serious enough that they cross into the substantive territory, compensatory damages are available.  <u>See</u> <u>C.H. v. Cape Henlopen Sch. Dist.</u>, 606 F.3d 59, 66 (3d Cir. 2010) ("A plaintiff who alleges the denial of a FAPE may seek compensatory relief in the form of appropriate educational services within the district (referred to as 'compensatory education') or tuition reimbursement for an appropriate placement in private school."); <u>C.P.</u>, 2020 WL 2611572 at *8.

claims pending related to the 45 Day Rule does not act as a per se bar to asserting a similar claim here.  Rycoline Prod., Inc. v. C & W Unlimited, 109 F.3d 883, 889 (3d Cir. 1997)("[W]e hold that the Entire Controversy Doctrine does not preclude the initiation of a second litigation before the first action has been concluded."); Youssef v. Dep't of Health & Sr. Servs., 524 F. App'x 788, 791 (3d Cir. 2013) (discussing Rycoline and noting that the New Jersey Supreme Court had since left open Rycoline's holding that the existence of a pending case does not bar the initiation of another case).  C.P., which Defendants point to, has not concluded.

Further, the Court sees good prudential reason to allow Count VII to proceed.  The Court takes seriously the general principle put forward by the New Jersey Supreme Court that courts should apply the entire controversy doctrine "to the extent possible."  Cogdell by Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 26, 560 A.2d 1169, 1178 (1989) ("Accordingly, we now hold that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy.")  In so holding, though, the New Jersey Supreme Court noted that the entire controversy doctrine was not "unbounded" and that it should not

20

be applied to the detriment of "a clear presentation of the issues and just result." Id. at 27.  It also need not be applied in favor of "monolithic adjudications." Id.  Ultimately the application of the doctrine is "'left to judicial discretion based on the factual circumstances of individual cases.'" Aragon Partners LP v. HDOX Bioinformatics, Inc., 2018 WL 1370661, at *6 (N.J. Super. Ct. App. Div. Mar. 19, 2018) (quoting Oliver v. Ambrose, 152 N.J. 383, 395 (1998)).  "The doctrine's joinder requirements may be relaxed on the grounds of equitable considerations." Id.  Ultimately, the "application of the entire controversy doctrine is 'equitable in nature' and based substantially on 'judicial fairness,' meaning that the Court must balance considerations of judicial efficiency as well as fairness to the litigants." Rogers v. Rushmore Loan Mgmt. Servs., LLC, 2021 WL 1921586, at *2 (D.N.J. May 13, 2021).

     The facts and procedural history of this case as well as that of C.P. do not compel the application of the entire controversy doctrine to bar Count VII at least not at this juncture.  First, C.P., and Plaintiffs' claims raised in that matter, have not been adjudicated, including disputes over class certification.  Moreover, Plaintiffs received a decision on their due process proceeding after this Court had rendered its decision on the motion to dismiss the Second Amended Complaint in C.P. which may have an effect on the range of remedies

available to these Plaintiffs in this matter if they prevail. (See ECF 9 at 46; C.P. Docket, ECF 98).  The NJDOE contends that Plaintiffs should have just moved to amend the Second Amended Complaint in C.P. (ECF 32 at 13-14).  The Court finds that suggestion unrealistic after the complaint in C.P. had already been amended twice and had been pending for a year.  (See C.P. Docket).

It is simply too early to determine give the breadth and scope of Plaintiffs' claims in this matter and the overall claims in C.P. to foreclose potentially valid claims because of a rigid application of judge-made rules.  Such a result does not vindicate the entire controversy, it undermines it.  Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc., 156 N.J. 580, 585, 722 A.2d 527, 529 (1999) ("One of the goals of the entire controversy doctrine is the efficient judicial administration of multiple claims. That is better accomplished when courts possess the facts upon which to base case-management decisions.")  At this time, the Court holds that it is not appropriate to construe the entire controversy doctrine so as to require dismissal of Count VII at this early stage of the litigation.

b. Counts VIII and IX: Violation of the ADA and § 504

The NJDOE also moves to dismiss Count VIII, violation of § 504, and Count IX, violation of the ADA.  They argue that dismissal of Counts XIII and IX is appropriate because the

claims require a showing "that the disabled person was denied
access to a service, program, or activity of the state on the
basis of their disability." (ECF 32 at 22).  Plaintiffs counter
that their complaint alleges that the NJDOE's dereliction of
their duties to provide proper special education dispute
resolution procedures was so egregious that they "constructively
closed the courtroom doors to Plaintiffs." (ECF 35 at 26).

To state a claim of violation Title II of the ADA or § 504,
"a plaintiff must show that he is a qualified individual with a
disability; that he was excluded from a service, program, or
activity of a public entity; and that he was excluded because of
his disability." Disability Rts. New Jersey, Inc. v. Comm'r,
New Jersey Dep't of Hum. Servs., 796 F.3d 293, 301 (3d Cir.
2015); Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288
(3d Cir. 2019) (noting that the substantive standards for both
claims are the same).  The parties do not appear to dispute that
H.S. is a qualified individual with a disability.  (See ECF 32,
35).  Rather, the crux of the dispute is whether Plaintiffs were
deprived of something they otherwise were entitled to as a
result of H.S.'s disability.  The complaint clearly states that
"NJDOE is prohibited from excluding students with disabilities
from participating in or receiving the benefits of a school's
services, programs, or activities, and such exclusion
constitutes disability discrimination" and that the flawed

dispute resolution procedures that the NJDOE put in place resulted in a "discriminatory outcome." (ECF 9 at 47-48). This, with the rest of the allegations in the complaint, is enough to satisfy the Court that Plaintiffs are entitled to proceed with their ADA and § 504 claims. Indeed, the Supreme Court has noted that an action may lie for violation of the ADA and § 504 where the facts arise out of an alleged violation of the IDEA. Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 750, 197 L. Ed. 2d 46 (2017) ("[T]he IDEA does not prevent a plaintiff from asserting claims under such laws even if. . .those claims allege the denial of an appropriate public education (much as an IDEA claim would).") Plaintiffs' complaint alleges that the NJDOE's flawed procedures pervaded the dispute resolution system to the extent that they effectively barred H.S. from receiving the same educational benefits as other children. (See ECF 9 at 48).

The NJDOEs characterize the allegations of violation of § 504 and the ADA as conclusory, focusing on statements like the above-quoted allegations. Plaintiffs certainly could have plead their claims more artfully, neatly tying together how the NJDOE's flawed procedures constituted discrimination or some sort of disparate impact in compact phraseology. But this Court reads the allegations in the complaint as a whole and the allegations read in that light tell a story of due process

24

procedures so deficient that Plaintiffs were not able to place their child in the right educational setting, a benefit that non-disabled children were readily receiving.  <u>Destro</u>, 2009 WL 3681903, at *2 (noting that a complaint must be read as a whole and in context).

The NJDOE also argues that Plaintiffs, as H.S.'s parents lack standing to state ADA and § 504 claims against them on their own behalf, because they, themselves, are not disabled. (ECF 32 at 22 n.6).  They cite to <u>D.A. ex rel. K.A. v. Pleasantville Sch. Dist.</u>, 2008 WL 2684239, at *6 (D.N.J. June 30, 2008) for the proposition that the parents here do not have associational standing.  This appears to be a facial attack of the Court's subject matter jurisdiction under Rule 12(b)(1) and the Court applies the Rule 12(b)(6) standard.  <u>In re Schering Plough Corp. Intron/Temodar Consumer Class Action</u>, 678 F.3d at 243.  It is a close question, but the Court holds that H.S.'s parents have stated a claim for violation of their rights under § 504 or the ADA.  To state a claim for associational discrimination under § 504 or the ADA, "a plaintiff must experience direct discrimination, and that the benefit must be separate and distinct and not merely derivative of the benefit to a disabled person[.]"  <u>United States v. Nobel Learning Communities</u>, 2017 WL 4697050, at *8 (D.N.J. Oct. 19, 2017).  <u>Nobel Learning Communities</u> held that where a child was denied

25

daycare services, the child's parents were harmed because it
deprived them of "otherwise unavailable time apart from their
children." Id.  The situation is similar here, where Plaintiffs
allege that because of the delays occasioned by the NJDOE's
procedures caused them to expend more than necessary on legal
fees and "NJDOE failed to provide H.S. and his parents an
impartial due process hearing, as required by federal law, and
resulting in a discriminatory outcome." (ECF 9 at 47-48).
Plaintiffs essentially claim that H.S.'s parents had to expend
time and resources that could have been used elsewhere were it
not for the NJDOE's failures.

While this portion of the pleading is admittedly
"barebones" as it was in Nobel Learning Communities, it is
"axiomatic" that impartial and timely due process hearing
procedures exist in part so that parents do not lose time and
money in getting their child in the appropriate educational
program.  Nobel Learning Communities, 2017 WL 4697050 at *8.
Indeed, D.A., on which the NJDOE relies, contemplated that there
could be a way to plead that parents of a disabled child were
harmed under § 504 and the ADA.  D.A. stated, "Here, as
individuals with a relationship to a person with a known
disability, D.A. and K.A. could have a cause of action under the
ADA and the Rehabilitation Act[.]" D.A., 2008 WL 2684239 at *6;
see also Addiction Specialists, Inc. v. Twp. of Hampton, 411

26

F.3d 399, 405 (3d Cir. 2005) (abrogated on other grounds by <u>PDX</u>
<u>N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.</u>,
978 F.3d 871 (3d Cir. 2020)) ("[T]he enforcement provisions of
the ADA and RA do not limit relief to 'qualified individuals
with disabilities.'")[4]  Thus, the Court declines the NJDOE's
invitation to dismiss Counts VIII and IX.

    c. <u>Count X: Violation of the NJCRA</u>

    The Court will dismiss Count X, the claim for violation of
the NJCRA.  The NJDOE argues that it is entitled to Eleventh
Amendment immunity for that claim and Plaintiffs do not contest
that point.  (ECF 32 at 25).  The Court will not allow
Plaintiffs an opportunity to amend Count X, because such
amendment would be futile.

    District courts "should freely give leave to amend when
justice so requires." <u>Schomburg v. Dow Jones & Co.</u>, 504 F. App'x
100, 103 (3d Cir. 2012) (citing Rule 15(a)(2)) (internal
alterations omitted).  "Thus, leave to amend ordinarily should
be denied only when amendment would be inequitable or futile."
(<u>Id</u>.)  "[T]hese principles apply equally to *pro se* plaintiffs
and those represented by experienced counsel." <u>Alston v.</u>
<u>Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  "Futility 'means that

---

[4] <u>Addiction Specialists</u> dealt specifically with the standing of a
methadone clinic to bring claims regarding discrimination in
town zoning ordinances rather than the standing of a parent of a
disabled client to bring an associational claim.  411 F.3d at
402-03.

the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011) (quoting Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010)).  Courts have held amendment to be inequitable where the plaintiff already had an opportunity to amend the complaint. Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000) ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint."); McMahon v. Refresh Dental Mgmt., LLC, 2016 WL 7212584, at *11 (W.D. Pa. Dec. 13, 2016) ("The court need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed.") (internal alterations and quotation marks omitted).

Here, the Court holds that amendment would be futile because Count X seeks damages directly against the NJDOE (ECF 50-52) and such a damages claim is barred by the Eleventh Amendment.  Courts have made clear that the Eleventh Amendment does not allow damages claims under the NJCRA to proceed against the state.  Docherty v. Cape May Cty., 2017 WL 3528979, at *4 (D.N.J. Aug. 15, 2017) ("Thus, the Court dismisses the § 1983 and NJCRA claims for damages against Lanigan in his official capacity, based on Eleventh Amendment immunity."); Rashid v.

28

Lanigan, 2018 WL 3630130, at *10 (D.N.J. July 31, 2018)
("Plaintiffs' claims seeking declaratory relief as to, and
monetary damages from, Defendants in their official capacities
are dismissed with prejudice as barred by Eleventh Amendment
immunity[.]")

   And courts in this district have made clear that the NJDOE
is an arm of the state for Eleventh Amendment purposes.  Wright
v. New Jersey/Dep't of Educ., 115 F. Supp. 3d 490, 494 (D.N.J.
2015) ("The Department of Education is considered an arm of the
state government for purposes of determining sovereign immunity
under the Eleventh Amendment."); ASAH v. New Jersey Dep't of
Educ., 2017 WL 2829648, at *7 (D.N.J. June 30, 2017) ("For the
purposes of the Eleventh Amendment, the DOE is an arm of the
state government.")  Given that Plaintiffs do not contest
dismissal of Count X, and because Eleventh Amendment immunity
bars Plaintiffs' damages claim under Count X against the NJDOE,
the Court will dismiss that count without leave to amend.

**CONCLUSION**

   For the reasons expressed in this Opinion, the NJDOE's
motion to dismiss (ECF 32) will be granted in part and denied in
part.  An appropriate Order will be entered.


Date: March 16, 2022          s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.


29
